

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Southern Division*

| | | | |
|---|---|---|---|
| Erin B. Pulice | Mailing Address: | Office Location: | DIRECT: 301-344-0217 |
| Assistant United States Attorney | 6500 Cherrywood Lane, Suite 200 | 6406 Ivy Lane, 8ᵗʰ Floor | MAIN: 301-344-4433 |
| Erin.Pulice@usdoj.gov | Greenbelt, MD 20770-1249 | Greenbelt, MD 20770-1249 | FAX: 301-344-4516 |

September 15, 2021

Michael D. Montemarano, Esq.
3826 Paul Mill Road, Suite 204
Ellicott City, MD 21042

> Re:   <u>United States v. Andrew Joseph Trimmer,</u>
> Criminal No. PWG-20-380

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Alicia Marie Walls (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. **The plea agreement is entered into and will be submitted to the Court pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C).** If this offer has not been accepted by **5:00 p.m. on September 30, 2021**, it will be deemed withdrawn. The terms of the Agreement are as follows:

<u>Offenses of Conviction</u>

1.     The Defendant agrees to waive indictment and plead guilty to Counts One, Two, and Three of a Superseding Information to be filed against the Defendant, which will charge the Defendant: in Count One, with Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances, in violation 21 U.S.C. § 846; in Count Two, with Possession with Intent to Distribute Controlled Substances, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C); and in Count Three with Assault on a Federal Officer, in violation of 18 U.S.C. § 111. The Defendant admits that the Defendant is, in fact, guilty of the offenses and will so advise the Court.

<u>Elements of the Offenses</u>

2.     The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows: That, on or about the time alleged in the Superseding Information, in the District of Maryland, and elsewhere—

<u>Count One (Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances):</u> (1) the Defendant and one or more persons entered the unlawful agreement charged in the Superseding Information, that is, an agreement to distribute and possess with intent to

Rev. August 2018

distribute fentanyl, a Schedule II controlled substance; and (2) the Defendant knowingly and willfully became a member of that conspiracy.

Count Two (Possession with Intent to Distribute Controlled Substances): (1) the Defendant possessed the controlled substance alleged in the Superseding Information, that is, fentanyl, a Schedule II controlled substance; (2) the Defendant knew that the Defendant possessed the controlled substance; and (3) the Defendant possessed the controlled substance with the intent to distribute the controlled substance.

Count Three (Assault on a Federal Officer): (1) on or about the date specified in the Superseding Information, the victim was a federal officer; (2) the Defendant forcibly assaulted, resisted, opposed, impeded, intimidated or interfered with the victim; (3) the forcible action involved actual physical contact with the victim; (4) the victim was engaged in the performance of his official duties; (5) the defendant acted willfully; and (6) the Defendant's actions resulted in bodily injury.

Penalties

3.      The maximum penalties provided by statute for the offenses to which the Defendant is pleading guilty are as follows:

| Count | Statute | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|---|---|---|---|---|---|---|
| 1 | 21 U.S.C. § 846, 841(b)(1)(C) | N/A | 20 years | At least 3 years and no more than life | $1,000,000 | $100 |
| 2 | 21 U.S.C. § 841(a)(1), (b)(1)(C) | N/A | 20 years | At least 3 years and no more than life | $1,000,000 | $100 |
| 3 | 18 U.S.C. § 111(a)(1) | N/A | 20 years | 3 years | $250,000 | $100 |

a.      Prison:  If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

b.      Supervised Release:  If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

c.      Restitution:  The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

      d.      Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

      e.      Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

      f.      Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

<u>Waiver of Rights</u>

4.      The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

      a.      If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to have a grand jury consider the charges in the Superseding Information against the Defendant. The Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

      b.      If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

      c.      If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses

in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

        d.      The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

        e.      If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

        f.      By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

        g.      If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

        h.      By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

<u>Advisory Sentencing Guidelines Apply</u>

        5.      The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a

sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

Factual and Advisory Guidelines Stipulation

6.     This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein. This Office and the Defendant further agree that the applicable advisory guidelines apply as follows:

Count One (Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances):

a.     The applicable base offense level, pursuant to United States Sentencing Guidelines ("U.S.S.G.") §§ 2D1.1(c)(7) and 1B1.3(a)(1), is **26**, because the quantity of narcotics involved in the offense, including relevant conduct, and reasonably foreseeable to the Defendant was at least 160 grams of fentanyl but less than 280 grams of fentanyl.

Count Two (Possession with Intent to Distribute Controlled Substances):

b.     The parties agree that the applicable base offense level is **43**, pursuant to U.S.S.G. §§ 1B1.2(a) and 2D1.1(a)(1), because the offense of conviction established that serious bodily injury resulted from the use of a controlled substance and that the Defendant committed the offense after one or more prior convictions for a similar offense. The parties further agree that, even if § 2D1.1(a)(1) did not apply, an upward departure to level **43**, pursuant to U.S.S.G. § 5K2.1 would be appropriate to account for the serious bodily injury of Victim A.

Count Three (Assault on a Federal Officer):

c.     The applicable base offense level is **14**, pursuant to U.S.S.G. § 2A2.2(a).

d.     A **6**-level enhancement applies, pursuant to U.S.S.G. § 2A2.2(b)(3)(E), because the victim sustained bodily injury and the degree of injury is between serious bodily injury and permanent or life threatening bodily injury.

Grouping:

e.     Count One and Count Two group, pursuant to U.S.S.G. §§ 3D1.1 and 3D1.2(d). Count Three does not group, pursuant to U.S.S.G. §§ 3D1.1 and 3D1.2(d). The offense level applicable to Group One is **43,** and the offense level applicable to Group Two is **20**. Pursuant to U.S.S.G. § 3D1.4(c), the applicable offense level does not increase, because the offense level applicable to Group Two is 9 or more levels less serious than Group One. Thus, the final combined offense level is **43**.

f.     This Office does not oppose a **2**-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a) based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal

conduct.  This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional 1-level decrease in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty.  This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a), and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

7.      There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

8.      Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

<u>Rule 11(c)(1)(C) Plea</u>

9.      The parties stipulate and agree, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), that the imposition of a total term of imprisonment on Counts One through Three of the Superseding Information **of not less than 114 months and not more than 132 months of imprisonment** in the custody of the Bureau of Prisons is the appropriate disposition of this case taking into consideration the nature and circumstances of the offense, the Defendant's criminal history, and all of the other factors set forth in 18 U.S.C. § 3553(a).

10.     This Agreement does not affect the Court's discretion to impose any lawful term of supervised release or fine or to set any lawful conditions of probation or supervised release.  In the event that the Court rejects this Agreement, except under the circumstances noted below, either party may elect to declare the Agreement null and void.  Should the Defendant so elect, the Defendant will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5).  The parties agree that if the Court finds that the Defendant engaged in obstructive or unlawful behavior and/or failed to acknowledge personal responsibility as set forth herein, neither the Court nor the Government will be bound by the specific sentence contained in this Agreement, and the Defendant will not be able to withdraw his plea.

Obligations of the Parties

11.     At the time of sentencing, this Office and the Defendant will jointly recommend that the Court impose a total term of imprisonment on Counts One through Three of the Superseding Information **of not less than 114 months and not more than 132 months of imprisonment**.  This Office and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Indictment.  At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

Waiver of Appeal

12.     In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

        a.     The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever.  This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statutes to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statutes, to the extent that such challenges legally can be waived.

        b.     If the Court imposes a term of imprisonment within the agreed-upon range, the Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

        c.     The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

Forfeiture

13.     The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offenses, substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

14.     Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in any money, property, and/or assets derived from or

obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities, including but not limited to:

    a.    approximately $1,143 in U.S. currency seized during execution of a search and seizure warrant in Bowie, Maryland on or about September 25, 2020;

    b.    a men's diamond 14kt yellow gold cross pendant and chain seized during execution of a search and seizure warrant in Bowie, Maryland on or about September 25, 2020;

    c.    a women's diamond 14kt rose gold cross pendant and chain seized during execution of a search and seizure warrant in Bowie, Maryland on or about September 25, 2020;

    d.    a Louis Vuitton Josh backpack (Damier Graphite World Tour Edition) seized during execution of a search and seizure warrant in Bowie, Maryland on or about September 25, 2020;

    e.    a Louis Vuitton flower hobo seized during execution of a search and seizure warrant in Bowie, Maryland on or about September 25, 2020;

    f.    a Louis Vuitton NeoNoe Azur handbag seized during execution of a search and seizure warrant in Bowie, Maryland on or about September 25, 2020;

    g.    a 2015 Audi A-4 sedan, bearing vehicle identification number WAUBFAFL9FN024885, seized during execution of a search and seizure warrant in Bowie, Maryland on or about September 25, 2020;

    h.    approximately $7,506.00 in U.S. currency recovered during co-defendant Alicia Walls' arrest in Annapolis, Maryland on February 4, 2021; and

    i.    approximately $8,518.00 in U.S. currency recovered during execution of a search warrant on co-defendant Alicia Walls' car on February 22, 2021.

15.    The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. This Office agrees to seek the Attorney General's approval to apply forfeited assets to the Defendant's Restitution Order.

16.    The Defendant agrees to assist fully in the forfeiture of the property described above. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

17.    The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

Rev. August 2018

### Restitution

18.     The Defendant agrees to the entry of a Restitution Order for the full amount of the victims' losses.  The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and §§ 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. The Defendant further agrees that he will fully disclose to the probation officer and to the Court, subject to the penalty of perjury, all information, including but not limited to copies of all relevant bank and financial records, regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation.  The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution.  If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement.

### Defendant's Conduct Prior to Sentencing and Breach

19.     Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

20.     If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure.  A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea.  The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if ma\de pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement.  In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

<u>Entire Agreement</u>

21.    This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case.  This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant.  There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement.  No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Jonathan F. Lenzner
Acting United States Attorney

Erin B. Pulice
Assistant United States Attorney

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney.  I understand it and I voluntarily agree to it.  Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it.  I am completely satisfied with the representation of my attorney.

9-24-2021
Date

Andrew Joseph Trimmer

I am the Defendant's attorney.  I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant.  The Defendant advises me that the Defendant understands and accepts its terms.  To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

Date

Michael Montemarano, Esq.

Rev. August 2018

10

## ATTACHMENT A

## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

Between at least in or around May 2018 and on or about September 25, 2020, in the District of Maryland and elsewhere, the Defendant, **ANDREW JOSEPH TRIMMER ("TRIMMER")** and **Alicia Marie Walls ("Walls"),** knowingly combined, conspired, confederated, and agreed with each other and others, known and unknown, to distribute and possess with the intent to distribute a mixture and substance containing a detectable amount of N-Phenyl-N-[l-(2-phenylethyl)-4-piperidinyl] propenamide, commonly known as fentanyl, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1).

On May 28, 2018, Victim A traveled with two friends to Bowie, Maryland in order to purchase several grams of heroin from **TRIMMER**. **TRIMMER** arrived at the narcotics transaction in a silver SUV and provided the heroin/fentanyl to Victim A in exchange for a cash. Victim A and Victim A's two friends ingested the heroin/fentanyl that **TRIMMER** distributed to Victim A. Shortly after ingesting the heroin/fentanyl, Victim A overdosed and lost consciousness. Victim A's friends called emergency responders, who arrived within minutes to a 7-Eleven in Crofton, Maryland. First responders gave Victim A an opioid antagonist and transported Victim A to the hospital for advanced life support and treatment. Victim A survived the overdose, which constituted a serious bodily injury.

**TRIMMER** distributed at least 1 gram of heroin/fentanyl to Victim A approximately two times per week for about two years. In addition to Victim A, **TRIMMER** and **Walls** had numerous narcotics customers in the Bowie area, including Victim B and Victim C. Occasionally, **TRIMMER** and **Walls** would sell heroin/fentanyl in the presence of their minor child, who was under three years old. **TRIMMER** and **Walls** worked as a team to distribute heroin/fentanyl. For example, if **TRIMMER** was unavailable to sell narcotics to customers, he would send **Walls.** Over the course of at least six months, **TRIMMER** and **Walls** distributed at least 240 grams of heroin/fentanyl to Victim B and Victim C.

On July 16, 2019, while caring for **TRIMMER** and **Wall's** minor child, **Walls** ingested narcotics and fell asleep. While **Walls** was asleep, the minor child, who was 9 months old at the time, obtained narcotics from **Walls's** belongings. The minor child subsequently ingested the narcotics and overdosed. **TRIMMER** and **Walls** transported the minor child to the Bowie Health Center where healthcare workers were able to revive the minor child with Narcan. The minor child was transported by helicopter to Children's National Medical Center where additional lifesaving measures were performed and the minor child survived.

Beginning on September 13, 2020, **TRIMMER** and **Walls** were living in a hotel room in Bowie, Maryland. On September 25, 2020, law enforcement officers went to execute a search and

seizure warrant on **TRIMMER** and **Walls's** hotel room. When officers arrived in the parking lot of the hotel, **TRIMMER** was seated in a Cadillac SUV. When officers announced themselves, **TRIMMER** yelled "Ohh, shit! Alicia **[Walls]**! I'm not going back [to prison]!" and tried to flee on foot. Officers ordered **TRIMMER** to stop, but **TRIMMER** refused to comply with officers' commands. Officer A attempted to physically stop **TRIMMER** from fleeing, but **TRIMMER** grabbed Officer A's body armor vest and began physically assaulting Officer A. Eventually **TRIMMER** forcibly overpowered Officer A and ran approximately 1/3 of a mile towards a fast-food restaurant in Bowie Town Center. Officer B responded to the fast-food restaurant where **TRIMMER** continued to resist arrest and physically assault Officer B. Eventually **TRIMMER** was apprehended. Officer A sustained a torn meniscus as a result of the assault. The torn meniscus constituted a serious bodily injury and could have resulted in permanent injury. At the time of the assault, Officer A was a federal officer who was engaged in the performance of his official duties.

During **TRIMMER'S** altercation with Officer A, **TRIMMER** shed his purple Baltimore Ravens jacket. In **TRIMMER'S** jacket pockets, officers recovered approximately 30 grams of fentanyl packaged in two separate corner-tied plastic bags, two cell phones, $1,143 in U.S. currency, car keys, and the keys to the hotel room **TRIMMER** and **Walls** had been staying. The $1,143 represented proceeds of narcotics sales. Lab results confirmed that the narcotics in **TRIMMER'S** jacket were fentanyl mixed with Diphenhydramine and Etizolam. In **TRIMMER'S** car, officers recovered four digital scales, plastic sandwich bags, and razor blades, all of which **TRIMMER** and **Walls** were using to distribute drugs. **Walls** was present at the hotel during the attempted arrest and the search and seizure warrants. During the execution of the search warrant in **Walls** and **TRIMMER**'s hotel room, officers seized the following personal property that had been purchased with narcotics proceeds:

- a Louis Vuitton Josh backpack (Damier Graphite World Tour Edition);
- a men's diamond 14kt yellow gold cross pendant and chain recovered from the Louis Vuitton Josh backpack;
- a women's diamond 14kt rose gold cross pendant and chain recovered from the Louis Vuitton Josh backpack;
- a Louis Vuitton flower hobo; and
- a Louis Vuitton NeoNoe Azur handbag.

Officers also seized a 2015 Audi A-4 sedan, bearing vehicle identification number WAUBFAFL9FN024885, belonging to **Walls** which was purchased with drug proceeds and used to facilitate the drug distribution conspiracy. In **Walls**'s Audi, officers located numerous boxes of over the counter pills containing Diphenhydramine.

After **TRIMMER** was taken into custody on September 25, 2020, **Walls** continued to sell heroin/fentanyl in the Southern Maryland area. On October 24, 2020, Victim B obtained a quantity of fentanyl/heroin from **Walls** and subsequently overdosed from ingesting the heroin/fentanyl. Victim B was transported to the hospital for advanced life support and treatment. Victim B ultimately survived. On October 26, 2020, **Walls** distributed heroin/fentanyl to Victim C in an apartment. Victim C overdosed after ingesting the heroin/fentanyl that **Walls** distributed to Victim C. When **Walls** learned that police would be responding to the overdose, **Walls** collected the

Rev. August 2018

remaining narcotics and fled the apartment. First responders arrived and transported Victim C to the hospital for advanced life support and treatment. Victim C ultimately survived.

During **Walls's** arrest on February 4, 2021, law enforcement recovered approximately $7,506 in U.S. currency. During execution of a search warrant on **Walls**'s car on February 22, 2021, law enforcement recovered $8,518 in U.S. currency, which was muddy and wet. At **TRIMMER'S** direction, **Walls** had previously recovered the seized funds, which had been buried in the woods. The funds seized on February 4, 2021 and February 22, 2021, represented proceeds of **TRIMMER** and **Walls's** drug distribution conspiracy.

In total, as part of this conspiracy, the amount of fentanyl/heroin reasonably foreseeable to **TRIMMER** and **Walls** was at least 160 grams but less than 280 grams, based on **TRIMMER'S** possession of at least 30 grams of fentanyl on September 25, 2020, and **TRIMMER** and **Walls's** distribution of at least 240 grams of heroin/fentanyl.

Following **TRIMMER**'s arrest, on three separate occasions while **TRIMMER** was incarcerated at the Chesapeake Detention Facility in Baltimore, Maryland, **TRIMMER** assaulted corrections officers. On April 21, 2021, a corrections officer informed **TRIMMER** that **TRIMMER** needed to move to administrative segregation housing. **TRIMMER** advised the corrections officer that **TRIMMER** was ready to be moved, but as soon as the corrections officer opened the door, **TRIMMER** rushed at the corrections officer and began to strike the officer in the face with a closed fist. **TRIMMER** refused to stop assaulting the officers and was taken to the medical unit for evaluation. **TRIMMER's** actions caused bodily injuries to several corrections officers who were involved in the altercation. While at the medical unit, **TRIMMER** refused treatment and was combative and verbally disrespectful to the medical staff.

On May 3, 2021, when a corrections officer asked **TRIMMER** to lock his cell at the conclusion of recreation, **TRIMMER** refused to comply and then assaulted the corrections officer.

On May 5, 2021, when **TRIMMER** learned that a virtual court hearing had been postponed, **TRIMMER** punched the television monitor and video camera equipment that inmates use for virtual court appearances several times and damaged the monitor. When a female corrections officer tried to calm **TRIMMER** down, **TRIMMER** lunged towards the female officer with his handcuffs in the air and attempted to assault the female corrections officer. Several other officers responded and attempted to restrain **TRIMMER**. **TRIMMER** continued to fight, kicking one officer in the face and biting another officer in the hands. **TRIMMER** caused bodily injury to several officers during this altercation. While in the medical unit, **TRIMMER** was yelling, "I'm not leaving until I get my motherfucking Adderall and suboxone… I'm going to give all you C.O. bitches the blues every day until I get the drug I fucking want!"

     SO STIPULATED:

 

Erin B. Pulice
Assistant United States Attorney

 

Andrew Joseph Trimmer
Defendant

 

Michael Montemarano, Esq.
Counsel for Defendant