IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|  |  |  |
|---|---|---|
| | * | |
| UNITED STATES OF AMERICA | | |
| | * | |
| v. | | No. PWG-20-380 |
| | * | |
| ANDREW TRIMMER | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM IN AID OF SENTENCING

Comes now the Defendant herein, Andrew Trimmer, through his undersigned counsel, Michael D. Montemarano, Esq., and Michael D. Montemarano, P.A., and  hereby provides this Court with this *Memorandum in Aid of Sentencing*, regarding certain issues relative to sentencing raised in the PSR, previously filed herein, and in support thereof does state as follows:

## Introduction

Mr. Trimmer is to be sentenced on November 22, 2021, upon his plea of guilty to count 1, 2 and 3 of the Superseding Information.  The plea agreement sets out, and Mr. Trimmer agreed to, certain factors which necessarily will impinge upon in the sentencing of this matter. Other considerations remain an issue with regard to sentencing, or are incorrectly or inadequately set out in the PSR, if not directly contradictory to established law, and as are more fully described *infra*, and it is these disputed matters to which this *Memorandum* initially is addressed.  On one of these points, the government appears to concur with the defense that the USSG do not adequately distinguish among various types of defendant conduct.  *See* ECF 98 at 10 (government sentencing memorandum).  These include, *inter alia*, the following matters.

Mr. Trimmer takes issue with the USSG computations set forth in the PSR, both in terms of their calculation, which the defense notes does not adequately distinguish among various types of conduct, even if free from "error" in the context of the applicability of certain guidelines.  Furthermore, the defense submits that this internal tension diminishes, if not entirely extirpates, any notion of the reasonableness of the sentence computed thereunder, whether or not such computations are indeed "accurate."

Mr. Trimmer further submits that any consideration of his criminal history based solely upon his "record" overstates his background and his likely propensity to reoffend, if his mental health and substance abuse issues are the subject of appropriate intervention.  Mr. Trimmer's conduct, it is plain to observe, is driven by these pre-existing mental health issues and his profound addiction, as is discussed in further detail, *infra*.

Mr. Trimmer also seeks to bring to the Court's attention those factors set forth in 18 USC § 3553(a), as applied to his unique situation, as will be discussed in further detail, *infra*, and as are required to be taken into account in calculating and imposing an appropriate, just and proportionate sentence.

**The correct guideline determination**

Prior to the commencement of the sentencing proceeding on November 22, Mr. Trimmer should be placed at CH V, offense level 40, as correctly determined in the PSR, per the definitional strictures set out in the USSG.  PSR ¶¶ 29-49.  The defense submits, however, the failure of the applicable USSG provision, § 1B1.2(a), to distinguish between a  victim's death or bodily injury, committing both prongs of victim injury to the same consideration, necessarily renders that guideline questionable, at the very least.

As further set out, *infra,* the USSG range is flawed, and furthermore there are personal and other considerations relative to the sentencing calculus which this Court should take into consideration in arriving at a just and constitutionally appropriate sentence. *See generally* 18 USC § 3553. The defense submits this begins with acceptance by the Court of the "C" plea range.

**The guideline sentence calculated by USPO**
**is presumptively unreasonable for Mr. Trimmer**

> It is the responsibility of district courts to develop principled methods
> for addressing this question and determining how much weight to put
> in the advisory Guideline range, especially in light of the 3553(a)
> factors that we must also consider. The reasonable-doubt standard, as
> a measurement of reliability, seems especially well-suited to the task
> of determining how much faith I should place in the Guideline advice.

*United States v. Gray*, 362 F.Supp.2d 714, 722 (S.D. W.Va. 2005).

The advice of Judge Goodwin in *Gray* is well-taken in this context. The Supreme Court held in *United States v. Booker,* 543 U.S. 220 (2005), that ultimate sentencing discretion must be vested in the trial court, and that 18 USC § 3553 sets out the guidelines for the exercise of this discretion. The decision in *Booker* followed in logical sequence from the Court's prior decisions in *Apprendi v. New Jersey,* 530 U.S. 466, *Ring v. Arizona*, 536 U.S. 584 (2002), and *Blakely v. Washington*, 542 U.S. 296. As one district court immediately observed, the playing field has become entirely different since *Booker*. "The directives of *Booker* and § 3553(a) make clear that courts may no longer uncritically apply the guidelines." *United States v. Ranum,* 353 F.Supp.2d 984, 985-986 (E.D. Wis. 2005) (thoughtful discussion of § 3553(a) factors which specifically had been precluded from consideration by the terms of the USSG).

This is not to say that federal criminal sentencing suddenly was seen to take place upon a *tabula rasa*. Indeed, in the constitutional exercise of its constitutional authority, Congress

has provided for federal courts those bases upon which sentences should be predicated, through the exercise of the courts' discretion, rather than imposing specific requirements upon which sentences **must** be based, without thought or discretion.  These factors, as set out in § 3553(a)(2), state that a sentence must reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and effectively provide the defendant with needed educational or vocational training and medical care.  Indeed, the USSG are now but one of the factors which the sentencing court must consider under § 3553(a).  *United States v. Ranum,* 353 F. Supp.2d at 985-86.

Since its decision in *United States v. Booker* which clarified the USSG as being merely advisory, the Supreme Court has gone yet further to provide precision as to the discretion which the district courts may and must exercise in imposing sentence.  It has held, in the linked opinions in *Kimbrough v. United States*, 552 U.S. 85, 106-11 (2007), and *Gall v. United States,* 552 U.S. 38, 48-57 (2007),  revolving around the specific question of the relationship of reasonableness and a sentence within the guidelines range, that a sentence within the USSG range is not presumptively reasonable.

At bottom, the basis for this underlying tension was plain.  The USSG, in permitting a broad-based inquiry and judicial fact-finding without concomitant procedural protections such as those required by the Sixth Amendment, permits the use of unreliable information in determining a sentence.  The USSG, in § 6A1.3, permit the use of information that is "probably accurate" and hearsay, even to the extent of mere allegations included in a PSR, absent the deflection of this by the defendant.  A presumption of reasonableness does not correlate with such calculations, as it vitiates the clear directive of *Booker* that the Sixth Amendment must guide a sentencing for the protection

of the defendant, to avoid the use of inherently unreliable information untested in any way; nor can such burden-shifting be countenanced.   In essence, the impermissible presumption by a sentencing court of the validity of the USSG range, *see United States v. Nelson,* 555 U.S. 350, 351-352 (2009) ("[t]he Guidelines are not only *not mandatory*, they are also not to be *presumed* reasonable") (emphasis in original), will undertake to manufacture a sentence by means absent the adversarial testing required by the Constitution.  *See Blakely v. Washington,* 542 U.S. at 305-08, 311-13; *United States v. Booker*, 543 U.S. at 230-44.

Beyond this plain statement of the effect the Guidelines should have, the Supreme Court has recognized that, practically speaking, they have an inordinate and disproportionate effect upon sentencing, and the miscalculation of the Guideline range can work an unconstitutional effect upon sentencing even though they are, and should be, merely advisory.  *See Peugh v. United States*, 569 U.S. 530 (2013).

While *Booker*, 543 U.S. at 245-46, states that the sentencing court should consider the USSG *along with* other considerations, in particular those set out in 18 USC § 3553, the government routinely had used this language to urge sentencing courts to consider those portions of the USSG which have been adjudged unconstitutional.  In urging that the Court's approach differ *only* in no longer treating the USSG as mandatory, the government's oft-argued posture in essence would urge the Court to ignore the plain meaning of *Booker, Kimbrough* and *Gall.*

> Judges are supposed to sentence outside the guideline range when the range is greater than necessary or insufficient to meet the purposes of sentencing. This is especially so in career offender/crack cocaine cases, like the instant one. Variances from the Guidelines are frequent in this group precisely because the career offender and crack cocaine guidelines are far too severe, clearly overbroad, and, in the case of the crack guideline, have a profoundly disparate impact on African American offenders.

5

In effect, an outside the guideline sentence may not be optional; it may well be essential to prevent both unwarranted disparity and unwarranted uniformity. Under the Guidelines, for example, the supplier of cocaine who does his dirty work through street dealers will have little or no criminal record; he may be treated less severely than individuals to whom he sells for street distribution who necessarily have frequent encounters with the police. Likewise, the courier who carries the drugs from the money source to the drug source, may be treated virtually the same (with minor role adjustments) as the people from whom he is taking direction and who stand to gain millions. As Judge Gleeson noted (in a different context) in *United States v. Ovid,* 2010 WL 3940724 [at *7] (E.D.N.Y.) "the fact that two fraud defendants have similar or even identical *Guidelines ranges* does not necessarily mean they committed similar offenses."

*United States v. Whigham*, 754 F.Supp.2d 239, 252 (D.Mass. 2010) (emphasis in original).  As

observed by the same court:

Similarly situated with respect to the Guideline categories does not necessarily mean similarly situated with respect to the defendant's actual role in the criminal endeavor other real culpability. Guideline categories (like career offender guidelines) are frequently over broad, giving the same "score" to individuals who are not remotely similar and ignoring critical differences between them (their role in the offense, their mens rea) that should bear on punishment.

*United States v. Whigham*, 754 F.Supp.2d at 242, *and id.* at 248-49 (noting "a flaw" in the USSG,

for the failure to consider other defendants in their calculations); *see also United States v. Garrison,*

560 F.Supp.2d 83, 84-85 (D.Mass. 2008) (criticizing the too-narrow approach by the USSG to the

term "similarly situated").  This is all the more true in the context of a drug conspiracy, where the

*foreseeable* drug amount attributed to two different members of the conspiracy may well be the

same, while concomitantly such a coarsely drawn analysis cannot begin to describe the relative

extent of their individual *agreements,* and their particular *culpability*, and most significantly, their

*role* in the conspiracy – which is to say the crime itself.  The USSG, among their legion of failings,

specifically do not permit a role reduction under § 3B1.2 for a person convicted of a narcotics

offense, when this is juxtaposed with the extent of the person's foreseeable conduct as expressed in

drug amounts.

This is the specific shortcoming of the USSG in this case for, as in the usual routine narcotics conspiracy, there can be no real question but that Mr. Trimmer dealt narcotics in the amounts as described by the government in the plea.  There is, however, equally little question that Mr. Trimmer's primary motivation in this was his profound addiction.  The immutable fact that his conduct was skewed yet further as a result of his addiction helped provide the basis upon which the plea offer was tendered by the USAO, notwithstanding the guidance of the USSG that would call for a far more severe sentencing calculus.  In sum, the USSG focus only on certain, but certainly not all, considerations which are relevant to sentencing.

As the USSG now are no longer are mandatory for the imposition of sentences, judges are free to exercise judicial discretion in crafting appropriate sentences for the particular circumstances involving particular defendants, and likewise to accept sentences recommended jointly by the parties and crafted in their arms-length discussions.  Indeed, it is understood that one of the primary failings of the mandatory scheme in the USSG was their failure to permit an adequate individualized consideration of criminal defendants, to the extent of § 5H1 and § 5K2.22 specifically delimiting, if not actually precluding, consideration of and departures regarding certain of those factors which specifically are set out in 18 USC § 3553(a), and the consideration of which by contrast is required of the sentencing court ("The court, in determining the particular sentence to be imposed, *shall* consider...") (emphasis supplied). Furthermore, the USSG focus only on certain, but certainly not all, considerations which are relevant to sentencing.  It is necessary for the sentencing court "to understand all the facts about the defendant's life and the circumstances of this offense, not simply the facts made relevant by the Guidelines." *United States v. Whigham*, 754 F.Supp.2d at 241.

> We canvass all of the many features of the case that bear on the culpability of the
> defendant. Though some of those features have been considered by the Sentencing
> Commission and incorporated into the Guidelines calculation, *many are not*. But they
> are still part of the nature and circumstances of the offense, or part of the history and
> characteristics of the defendant, and thus may (indeed must) be factored into the
> sentence by the judge.

*United States v. Ovid,* 2010 WL 3940724 at *6 (E.D.N.Y.) (emphasis supplied). This constitutional

dimension of the sentencing process is not always accorded the paramount importance which it

serves, and Congress has required.

Furthermore, following from the rationale described in *Spears v. United States*, 555

U.S. 261, 262-267 (2009), this Court in its role as the sentencing court is permitted to disagree with

the policy underlying *any part* of the USSG, and such disagreement may inform a departure from

the sentence described by their application. *See also Kimbrough v. United States*, 552 U.S. at 85-

110. Indeed, *Kimbrough* can be understood to support the proposition that "a categorical

disagreement with and variance from the Guidelines is not suspect," *Spears,* 555 U.S. at 264, *citing*

*Kimbrough,* 552 U.S. at 109, which is to say that the sentencing court need not determine that a

guideline provision works an injustice in a particular case, rather the court may reject a provision

categorically and universally, so long as the sentence it imposes is reasonable. While *Kimbrough*

involved a determination made with regard to the crack/cocaine disparity, the logic is equally

compelling in other contexts, where the USSG policy is similarly unsupported by empirical evidence,

research or analysis. *United States v. Dorvee*, 616 F.3d 174, 188 (2d Cir.2010) (child pornography);

*United States v. VandeBrake,* 679 F.3d 1030, 1033-37 (8th Cir.2012) (antitrust); *United States v.*

*Corner,* 598 F.3d 411, 415 (7th Cir. 2010) (en banc) (career offender); *United States v. Cavera,* 550

F.3d 180, 191 (2d Cir.2008) (en banc) (firearms); *United States v. Jones,* 531 F.3d 163, 178-82 (2d

Cir.2008) (crack); *United States v. Merced*, 603 F.3d 203, 217-20 (3d Cir.2010) (career offender).

Pairing bodily injury and death, and enhancing both results on the same scale, as is done in USSG

§ 1B1.2(a), provides a similar failing within the overall approach required by the USSG.

Unfortunately, this shortfall plainly is due to the fact that, in spite of the congressional

mandate that the decisions regarding the framing of the USSG be based upon empirical evidence and

study, such is not always the case. The recently-amended crack cocaine guideline is not the sole

example of this. *See, e.g., United States v. Whigham*, 754 F.Supp.2d at 248 (critique of career

offender guideline as well); *United States v. Newhouse,* 919 F.Supp.2d 955 (N.D. Ia. 2013) (same).

A categorical disagreement with a flawed guideline is not suspect – it is **required**. *See Whigham*,

754 F.Supp.2d at 252. This Court is able to manifest its disagreement with this manifestly

unreasonable operation of § 1B1.2(a) by accepting the "C" plea range.

While *Booker*, 543 U.S. at 245-46, states that the sentencing court should consider

the USSG *along with* other considerations, in particular those set out in 18 USC § 3553, the

government routinely had used this language to urge sentencing courts to consider those portions of

the USSG which have been adjudged unconstitutional. To its credit, in this case the government has

abandoned this one size fits all approach. In the past, the urging that the Court's approach differ *only*

in no longer treating the USSG as mandatory, the government's posture argued in essence that the

Court to ignore the plain meaning of *Booker, Kimbrough* and *Gall.*

> Judges are supposed to sentence outside the guideline range when the range is greater
> than necessary or insufficient to meet the purposes of sentencing. This is especially
> so in career offender/crack cocaine cases, like the instant one. Variances from the
> Guidelines are frequent in this group precisely because the career offender and crack
> cocaine guidelines are far too severe, clearly overbroad, and, in the case of the crack
> guideline, have a profoundly disparate impact on African American offenders.

> In effect, an outside the guideline sentence may not be optional; it may well be essential to prevent both unwarranted disparity and unwarranted uniformity. Under the Guidelines, for example, the supplier of cocaine who does his dirty work through street dealers will have little or no criminal record; he may be treated less severely than individuals to whom he sells for street distribution who necessarily have frequent encounters with the police. Likewise, the courier who carries the drugs from the money source to the drug source, may be treated virtually the same (with minor role adjustments) as the people from whom he is taking direction and who stand to gain millions. As Judge Gleeson noted (in a different context) in *United States v. Ovid,* 2010 WL 3940724 [at *7] (E.D.N.Y.) "the fact that two fraud defendants have similar or even identical *Guidelines ranges* does not necessarily mean they committed similar offenses."

*United States v. Whigham*, 754 F.Supp.2d at 252 (emphasis in original).

Unfortunately, in spite of the congressional mandate that the decisions regarding the framing of the USSG be based upon empirical evidence and study, such is not always the case. The crack cocaine guideline is not the sole example of this. *See, e.g., United States v. Whigham*, 754 F.Supp.2d at 248 (critique of career offender guideline as well); *United States v. Newhouse,* — F.Supp.2d —, 2013 WL 346432 (N.D. Ia.) (same).

Furthermore, the USSG focus only on certain, but certainly not all, considerations which are relevant to sentencing. It is necessary for the sentencing court "to understand all the facts about the defendant's life and the circumstances of this offense, not simply the facts made relevant by the Guidelines." *Id.* at 241.

> We canvass all of the many features of the case that bear on the culpability of the defendant. Though some of those features have been considered by the Sentencing Commission and incorporated into the Guidelines calculation, *many are not*. But they are still part of the nature and circumstances of the offense, or part of the history and characteristics of the defendant, and thus may (indeed must) be factored into the sentence by the judge.

*United States v. Ovid,* 2010 WL 3940724 (E.D.N.Y.) (emphasis supplied).

**Mr. Trimmer's Personal Background and § 3553**

In *United States v. Moreland*, 568 F.Supp.2d 674 (S.D.W.V. 2008), the district court

rejected the casual "one  size fits all" approach to criminal record analysis undertaken by the

Commission in promulgating the guidelines.  The court found grouping all prior narcotics offenses

together regardless of amount of drugs, sentence imposed or time passed since the conviction, to be

consummately unjust.  Equating Mr. Moreland's two distribution offenses, amounting to a single

marijuana cigarette and less than a quarter ounce of crack (6.92 grams), both committed over a

decade previously and collectively penalized by less than a year in prison, to those committed by a

drug kingpin or violent drug offender using firearms to commit his crimes, constituted unwarranted

similarity of treatment. *Id.* at 686-87.  Indeed, this moved beyond the removal of unwarranted

disparities toward the unreasonable end of removing all disparities.  Furthermore, these offenses

"hardly constitute the type and pattern of offenses that would indicate Mr. Moreland has made a

career out of drug trafficking."  The court viewed the likely 30 year sentence to "disposal" of the

defendant, an individual whom it found to have an excellent chance of turning his life around.

> The career offender guideline provision provides no mechanism for evaluating the
> relative seriousness of the underlying prior convictions.  Instead of reducing
> unwarranted sentencing disparities, such a mechanical approach ends up creating
> additional disparities because this Guideline instructs courts to substitute an artificial
> offense level and criminal history in place of each individual's precise characteristics.
> This substitution ignores the severity and character of the predicate offenses.

*Id.* at 688.

Based now at least in some part on a strong attorney-client relationship, Mr. Trimmer

has come to demonstrate significant remorse for his involvement in narcotics activity and his related

conduct, which he submits was driven in major portion by chemical desperation.  To be sure, this

has a foundation dating to before his representation by undersigned counsel, and counsel must aver

to the Court that Mr. Trimmer's behavior is both adaptable and appropriate, when confronted in the

requisite manner.

The defense urges this Court to give serious and particularized consideration to the

sentencing considerations under § 3553 which relate to Mr. Trimmer. These include:

• *"the history and characteristics of the defendant;"* Mr. Trimmer, now 32, suffers from

not-inconsiderable and haltingly and ineffectively treated mental health and substance abuse issues,

dating back to his teens.  PSR ¶¶ 74-80.  Evincing a mature and considered approach to his present

situation, he has abandoned his parental rights to his son in favor of his father, as a means by which

to create some stability in the life of a toddler.  It is notable that Ms. Walls has promised but has yet

to do so. PSR ¶ 70.

• *"the nature and circumstances of the offense;"* The offenses of conviction speak for

themselves.  His resisting arrest and assault on law enforcement was tied directly to the desperation

universally noted among addicts who must face being cut off from their drugs.  ("Oh, shit, Alicia.

I'm not going back [to prison]."  PSR ¶ 14)   That being said however, it is clear that while all

narcotics felonies are equal in the eyes of the law, in terms of their underlying facts and how these

relate to their participants, some are more equal than others.  This was recognized by the experienced

prosecutor and embodied in the plea offer she made to Mr. Trimmer.

• *"the seriousness of the offense;"*  It cannot be suggested that this is not a serious offense,

and the defense would not put forward such a proposition.  That being said, considered in light of

its motivations, it is plain that Mr. Trimmer's offense was less serious than that of many others

before this Court charged with the very same statutory violation, not that the USSG would account

for this.

• *that the sentence provide "just punishment for the offense;"* A particular criminal defendant merits, in light of due process considerations, a particularized consideration.

• *that the sentence promote "respect for the law;"[1]* Likewise

\   • *"to afford adequate deterrence to criminal conduct;"* The defense respectfully submits that the simple fact of a federal prosecution has a deterrent effect all its own, and, when taken with the other factors which inform this sentencing, will afford adequate deterrence to similar conduct by others.

• *"the protection of the public;"* The conspiracy has been at an end for a year. Mr. Trimmer's current conduct augurs that he presents no significant risk to the public. Treated appropriately, this should obtain equally regarding correctional staff.

• *to provide the defendant "needed educational or vocational training, [and] medical care;"* Mr. Trimmer suffers from mental health issues, and untreated medical problems, tied directly to and exacerbated by profound drug use. PSR ¶¶ 74-80.

• *"the kinds of sentences available;"* In light of his manifest concern for his son, the defense cannot concur with (even while it understands) the government's seeking 132 months, and further must remind the Court that the damage likely to the child from having both parents incarcerated simultaneously can be in some measure ameliorated by a sentence lower than the top of the "C" plea range.

• *"the need to avoid unwarranted sentencing disparity among defendants with similar*

---

[1] and, perforce, the criminal justice system, in its demonstrating a particularized understanding of an individual defendant.

***records who have been found guilty of similar conduct;"*** The "C" plea range for Mr. Trimmer

describes a sentence entirely commensurate with that to which Ms. Walls accepted in her plea.

### Hard time and harder time

Mr. Trimmer has been incarcerated through much of the worst part of the COVID

pandemic. He therefore also requests that, in its computations and assessment of credit for

incarceration post-arrest, that this Court take into account the conditions of confinement at the

facilities utilized by USMS. These undisputed conditions render CDF, the institution where Mr.

Trimmer originally was held pending trial and sentencing (a situation which is almost entirely

without any control of a criminal defendant), entirely "a very rough place to serve time." *United

States v. Franz Sutton*, 2007 WL 3170128 at *1 (D.N.J. 2007). CDF lacks any form of rehabilitative

programs, has limited medical care, sanitation, and opportunities for exercise, and is overcrowded,

all of which conditions have been addressed to the attention of the bench in this District repeatedly

in the past. *Cf. United States v. Franz Sutton*, at *4 ("those 'in the know' ... are ... fully aware of the

indignities and failures that Sutton has complained about.").

> Unusual pretrial confinement, however, in either length or severity of condition, can properly be considered by the sentencing court.
>
> The Court's conclusion follows from the Supreme Court's holding in *Koon* [*v. United States,* 581 U.S. 81 (1996)] that the "hardship" of successive state and federal prosecutions can serve as a basis for a downward departure. Here, too, the "hardship" of pretrial detention, if sufficiently atypical, could serve as a basis for a downward departure.

*United States v. Julio Sutton,* 973 F.Supp. 488, 493 (D.N.J.). A downward variance therefore was

merited under § 3553(a)(2), "to ... promote respect for the law". *United States v. Franz Sutton,* at

*9-10. Other courts have agreed that conditions of confinement can constitute a basis for departure.

*See United States v. Carty,* 264 F.3d 191, 196 (2d Cir. 2001), (pointing to § 3553(b) as a basis, "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." per USSG § 5K2.0); *accord United States v. Pressley,* 345 F.3d 1205, 1218 (11th Cir. 2003).   The defense therefore requests that this Court either grant Mr. Trimmer additional credit for his pretrtial detention, or concomitantly reduce the total sentence term it imposes.

**Conclusion and Suggested Sentence**

The description above, taken together, leads to an adjusted offense level of 40 (base level of 43, less 3 for acceptance of responsibility), criminal history category V (for eleven points, *see* PSR ¶ 59).  The "C" plea provides a sentencing range of 114-132 months.

That being said, the defense would not suggest that Mr. Trimmer is not responsible for his offense.  He willfully engaged in the conduct, and is prepared to be punished for it.  But, as *United States v. Booker*,  543 U.S. 220 (2005),  has made clear, there can be no justice where it is not tempered with mercy, and mercy readily can be defined as an individualized consideration of the background and factors relative to a particular defendant, which will result in a sentence which is just.

The defense respectfully submits that a sentence in the range of 117-123 months represents the lowest possible reasonable sentence, likewise would be appropriate in light of Mr. Trimmer's personal circumstances and involvement in this matter.

As noted, following from the rationale described in *Spears v. United States*, 555 U.S. at 262-267, this Court in its role as the sentencing court is permitted to disagree with the policy underlying any part of the USSG, and such disagreement may inform a departure from the sentence

described by their application, since the guidelines "are advisory only." *Kimbrough,* 552 U.S. at 91; *see* 85-110.   Indeed, *Kimbrough* can be understood to support the proposition that "a categorical disagreement with and variance from the Guidelines is not suspect," *Spears,* 555 U.S. at 264, *citing Kimbrough,* 552 U.S. at 109.   As Judge Gertner tartly observed:

> Thus, it is simply not the case that sentencing precisely according to the Guidelines promotes the SR A's concerns about unwarranted disparity. Indeed, just the opposite.

*Whigham*, 754 F.Supp.2d at 253.

In essence, this *Memorandum* argues that the Court's discretion is bounded only by its good sense predicated upon the unique factual situation presented by an individual defendant. The previously discussed considerations, *supra*, argue in favor this Court acting to "tailor the sentence in light of other statutory concerns as well," *Booker*, 543 U.S. at 245-46, and to impose a sentence which is reasonable.  *Id.* at 261-63 (discussing review of sentences for "reasonableness"); *see* 18 USC § 3742(e).  The defense urges the Court to accept the "C" plea, and to impose a sentence within the lower half of the range it provides.

Respectfully submitted,

November 15, 2021                                        /s/
                                              MICHAEL D. MONTEMARANO

                                              Law Offices of Michael D. Montemarano, P.A.
                                              3826 Paul Mill Road
                                              Suite 204
                                              Ellicott City, Maryland  21042
                                              (410) 992-0067/Fax (443) 663-3002
                                              Counsel of Record/CJA Counsel

16

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on or before this 15th day of November, 2021, a copy of the foregoing *Memorandum in Aid of Sentencing* was filed via ECF, and served thereby on Amy Schwartz, Esq., Special Assistant United States Attorney, 6406 Ivy Lane, 8th floor, Greenbelt, MD 20770.


/s/<br>MICHAEL D. MONTEMARANO